# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |
|---|
| **DURRELL K. JACKSON**, |
| Plaintiff, |
| v. |
| **EXECUTIVE OFFICE FOR UNITED STATES ATTORNEYS**, |
| Defendant. |

Case No. 1:17-cv-02208 (TNM)

## MEMORANDUM OPINION

Durrell K. Jackson filed this case under the Freedom of Information Act ("FOIA") to obtain records maintained by the Executive Office for United States Attorneys ("EOUSA"). EOUSA has moved for summary judgment. *See* ECF No. 14. For the reasons discussed below, the Court will grant the motion.[1]

## I. BACKGROUND

In January 2015, Mr. Jackson submitted a FOIA request to EOUSA for information relating to his criminal case in the Northern District of Iowa. He sought:

> 1. [A]ll search warrants, evidence and any misc. items in relations to package that . . . went to Waterloo, Iowa, at approximately 10:07am on June 29, 2000 with package tracking no. 10897-1870110001107. All evidence include search warrant(s), record(s) (official and/or unofficial), memorandum(s), jencks [sic] material(s), note(s), electronic messages & bulletin board(s), telephonic recording(s), any telecommunication(s) (oral and/or written), witnesse(es) [sic], computer(s) and all attachment internal

---

[1] Also before the Court is Mr. Jackson's Motion for Default. *See* ECF No. 24. Contrary to Mr. Jackson's assertion, EOUSA filed a supplemental declaration as required by the Court's November 21, 2018 order. Default is therefore not warranted, and the Court will deny Mr. Jackson's motion.

> & external in relation to computers, e.g., harddrives, thumbdrives, floppy disk(s), etc., internet and/or intranet.
>
> 2. All information requested above pertaining to search warrants, are not limited to (State District Attorney(s) and U.S. Attorney(s). The evidence are [sic] requested to Agencies, Co-Agencies, corporations, companies, partnerships, and anyone associated to this case pertaining to search warrant mentioned above.
>
> 3. Any evidence and/or attachments issued on or about June 29-30, 2000, related to UPS parcel no. 1 0897-1 870110001107, also affidavit sworn by UPS business manager Timothy Jochium . . . .

Smith Decl., Ex. 1 at 1.[2] EOUSA assigned the matter a tracking number and forwarded the request to the United States Attorney's Office for the District of Iowa ("USAO"). Smith Decl. ¶ 4.

Debra Nash, the USAO's FOIA Coordinator, found files for Mr. Jackson's criminal case and a related civil case. *Id*. ¶ 5. Although she did not locate the search warrant itself, Ms. Nash found "Government Exhibit 10, which consisted of subsidiary exhibits [10A through 10G] comprising the UPS package, contents, and related documents." *Id*. ¶ 5.b. She also found "a facsimile transmission from an Iowa state drug task force [containing] a laboratory receipt and laboratory report for cocaine shipped inside the UPS package." *Id*. ¶ 5.c.

The responsive records totaled 93 pages, 38 of which were "copies of public court records maintained in the USAO criminal case file." *Id*. ¶ 6. Of the remaining 55 pages, 49 were photocopies of Government Exhibit 10, four were the fax described above, and two were the "affidavit of a UPS employee that is a duplicate of a part of Government Exhibit 10G." *Id*. Ms. Nash sent these 93 pages to EOUSA. *Id*. ¶ 5.

---

[2] EOUSA relies on the declarations of Theodore B. Smith, an Attorney-Advisor with EOUSA. *See* ECF Nos. 14-1 ("Smith Decl.") and 24-1 ("Supp. Smith Decl.").

Mr. Jackson's criminal case was investigated and prosecuted by the USAO and other federal, state, and local law enforcement organizations as part of the Organized Crime Drug Enforcement Task Force (OCDETF) program. *Id*. ¶ 8. EOUSA referred the non-public pages of records to OCDETF. The Task Force returned the records to EOUSA when it determined that they "were USAO records rather than OCDETF records." *Id*. ¶¶ 9, 17.

EOUSA then sent Mr. Jackson 91 of the 93 responsive pages. *Id*. ¶ 19. The production included 38 pages of public records. *Id*. EOUSA released 43 of the remaining pages in full, released 10 pages in part, and withheld two pages in full because they were duplicates of the pages released in part. *Id*. The agency relied on FOIA Exemptions 6 and 7(C) to redact personally identifying information about third parties from the 10 partially released pages. Supp. Smith Decl. ¶ 1.[3]

## II. DISCUSSION

Courts typically resolve FOIA cases on motions for summary judgment. *See Brayton v. Office of the U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In a FOIA case, the agency must show that there is no genuine issue of material fact about its compliance with FOIA's requirements. *See Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994). An agency may prevail based only on a supporting declaration. *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999). To do so, the agency must "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and [that the information is]

---

[3] The Court has federal question jurisdiction over this case. 28 U.S.C. § 1331.

not controverted by either contrary evidence in the record [or] by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981) (footnote omitted).

### A.  The USAO's Search for Responsive Records was Reasonable.

An agency "fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (citations and internal quotation marks omitted).  Ms. Nash located files associated with Mr. Jackson's criminal case and a related civil case.  She then searched these files for records about a search warrant for the UPS package Mr. Jackson identified in his FOIA request.  This was a reasonable and logical process to look for any relevant documents.

Indeed, Mr. Jackson does not challenge the scope or method of the USAO's search.  Rather, he objects to the results of the search as Ms. Nash did not find the warrant itself.  But "[m]ere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them." *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1201 (D.C. Cir. 1991).  And "the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003).

Mr. Jackson offers no reason not to accord EOUSA's supporting declarations the customary "presumption of good faith," and he fails to rebut these declarations with anything more than purely speculative claims about the existence and discoverability of other documents." *Id*. at 1200 (cleaned up).  And an agency that neither possesses nor controls responsive records does not violate FOIA by failing to release them.  *See DiBacco v. U.S. Army*, 795 F.3d 178, 192

(D.C. Cir. 2015).  For these reasons, the Court finds that the search for responsive records was reasonable.

### C.  EOUSA Properly Applied Exemption 6.[4]

EOUSA redacted personally identifying information about third parties based on FOIA Exemption 6.  That exemption protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  The Court finds that EOUSA properly applied Exemption 6.

First, the Court must determine whether the relevant records "are personnel, medical, or 'similar' files covered by Exemption 6."  *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1228 (D.C. Cir. 2008).  The term "similar files" is interpreted broadly to include "detailed Government records on an individual which can be identified as applying to that individual."  *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982) (citations omitted).  It "covers not just files, but also bits of personal information, such as names and addresses, the release of which would create a palpable threat to privacy."  *Prison Legal News v. Samuels*, 787 F.3d 1142, 1147 (D.C. Cir. 2015) (cleaned up).

EOUSA redacted the following information:

- The name and street address of a private individual handwritten on a UPS receipt;
- The name of a suspect and the name and signature of a lab technician who performed drug tests;

---

[4]  EOUSA relies on both Exemptions 6 and 7(C) to justify the redactions of personally identifying information about third parties.  Smith Decl. ¶ 19.  Under Exemption 7(C), an agency may protect "records or information compiled for law enforcement purposes . . . to the extent that disclosure . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  Because neither of EOUSA's declarations state that the responsive records were compiled for law enforcement purposes, the Court considers Exemption 6 only.

- The names of three codefendants in Mr. Jackson's criminal case; the name of a records custodian; and the names of two private individuals;

- The name and telephone number of two private individuals;

- The name of a United States Attorney's Office staff member;

- The handwritten names, signatures, and telephone numbers of certain law enforcement officers; and

- The name and signature of state drug testing laboratory employee certifying drug testing results.

*See* Smith Decl. ¶¶ 3-11.[5]

This information qualifies as "similar files" under Exemption 6. *See Pinson v. Dep't of Justice*, 313 F. Supp. 3d 88, 112 (D.D.C. 2018) (concluding that Exemption 6 protects telephone numbers of Bureau of Prisons staff members and noting that, "in some instances, employees' direct contact information may be personal information, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy"); s*ee also Calderon v. U.S. Dep't of Agric.*, 236 F. Supp. 3d 96, 120 (D.D.C.), *appeal dismissed sub nom. Calderon v. United States Dep't of Agric., Foreign Agric. Serv.*, No. 17-5088, 2017 WL 4231169 (D.C. Cir. May 31, 2017). The information EOUSA redacted "can be identified as applying to [those] individual[s]." *Wash. Post*, 456 U.S. at 602 (citations omitted). Thus, these records fall under Exemption 6.

Second, the Court must determine whether "disclosure 'would constitute a clearly unwarranted invasion of personal privacy.'" *Multi Ag Media*, 515 F.3d at 1228 (quoting 5 U.S.C. § 552(b)(6)). This analysis requires the Court to "balance the privacy interest that would be compromised by disclosure against any public interest in the requested information." *Id*. (citations omitted).

---

[5] Smith's supplemental declaration includes two paragraphs designated "3." This reference is to the first paragraph 3.

Exemption 6 does not offer a categorial exemption for the identities of individuals. *Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 153 (D.C. Cir. 2006). But "[t]he scope of a privacy interest under Exemption 6 will always be dependent on the context in which it has been asserted." *Armstrong v. Exec. Office of the President*, 97 F.3d 575, 581 (D.C. Cir. 1996). Here, the personally identifying information would be released to a federal prisoner. As EOUSA's declarant explains:

> [F]ederal prison inmates sometimes use names, addresses, signatures, and other identifying information of private and law enforcement third parties for improper purposes, including to threaten, intimidate, or endanger individuals they believe to have been cooperating witnesses, or to engage in conduct intended to harass or annoy such private or law enforcement parties. Such harassing behavior, in [the declarant's] personal experience, has including the filing of fraudulent tax returns in the name of a federal prosecutor, agent, assistant federal public defender, and district judge.

Supp. Smith Decl. ¶ 3.[6]

Based on this declaration, the Court finds that the third parties whose information EOUSA redacted have a substantial interest in protecting their privacy. *See Multi Ag Media*, 515 F.3d at 1229-30 ("A substantial privacy interest is anything greater than a *de minimis* privacy interest.") (citation omitted). Balancing this interest against the public's interest in disclosure is simple. Mr. Jackson's sole mention of the claimed exemptions is an unsupported assertion "that the document . . . he has requested . . . under the FOIA does not fall under any of the enumerated exemptions[.]" Reply to EOUSA's Mot. for Summ. J. at 4. He identifies no public interest, compelling or otherwise, why such third-party information should be disclosed. "[S]omething, even a modest privacy interest, outweighs nothing every time." *Nat'l Ass'n of Retired Fed.*

---

[6] This refers to the supplemental declaration's second paragraph 3.

*Employees v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989). In short, EOUSA properly applied Exemption 6.

### D. EOUSA Released all Reasonably Segregable Information.

"It has long been a rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Central*, 566 F.2d at 260; *see* 5 U.S.C. § 552(b). EOUSA's declarant identifies the particular information withheld on each of the 10 pages of records at issue and explains why EOUSA made these limited redactions. The Court finds that the declaration adequately establishes that EOUSA has released all reasonably segregable information.

### III. CONCLUSION

EOUSA has shown that there is no material fact in dispute about its compliance with FOIA and that it is entitled to judgment as a matter of law. The Court will therefore grant its Motion for Summary Judgment. A separate Order accompanies this Opinion.

Dated: March 5, 2019

TREVOR N. McFADDEN
United States District Judge